**FILED**
**Apr 02, 2024**
**01:39 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT JACKSON

| | | |
|---|---|---|
| **COURTNEY WADE,** | ) | **Docket No. 2021-07-1326** |
| **Employee,** | ) | |
| **v.** | ) | **State File No. 42900-2023** |
| **UNITED PARCEL SERVICE, INC.,** | ) | |
| **Employer,** | ) | **Judge Robert Durham** |
| **And** | ) | |
| **LIBERTY MUTUAL INS. CO.,** | ) | |
| **Insurer.** | ) | |

---

## EXPEDITED HEARING ORDER DENYING BENEFITS

---

The Court held an Expedited Hearing on March 21, 2024, to determine whether Mr. Wade's need for a left-hip replacement primarily arose out of his work injury and whether he is entitled to additional temporary disability benefits. The Court holds Mr. Wade did not show he is likely to prove at trial that his need for a hip replacement primarily arose out of his work injury. His request for additional benefits is denied at this time.[1]

### History of Claim

Mr. Wade suffered immediate low-back and neck pain on April 8, 2020, when a car rear-ended his truck while he was in the back removing packages for delivery. After he failed to improve with conservative treatment, he chose orthopedic doctor Samuel Murrell from a panel.

Mr. Wade first saw Dr. Murrell in January 2021. He mostly complained of neck pain but also said he had low-back pain that traveled down his left leg. Dr. Murrell reviewed a lumbar MRI that revealed a left L5-S1 disc protrusion. He also ordered a cervical MRI that showed a right-sided disc protrusion. After conservative treatment, he performed a cervical fusion in June 2021. Mr. Wade showed only minimal improvement in his neck symptoms, and he continued to complain of low-back, bilateral leg, and right-

---

[1] The parties agreed that UPS stopped paying temporary disability benefits on January 22, 2024.

groin pain. Dr. Murrell ordered another lumbar MRI and again noted the L5-S1 disc protrusion resulting in left-sided nerve impingement.

Dr. Murrell performed back surgery in August 2022. Afterward Mr. Wade continued to complain of left-groin pain, so Dr. Murrell obtained an MRI of both hips. It revealed significant left-hip osteoarthritis, and Dr. Murrell felt that relieving the hip pain could help resolve Mr. Wade's low-back complaints. He recommended that Mr. Wade see orthopedist Dr. Andrew Wodowski, a hip replacement specialist.

After making the direct referral, Dr. Murrell responded to a letter from Mr. Wade's counsel, agreeing that the work injury "more likely than not" caused an "exacerbation" of a left-hip pathology that had been "previously clinically silent and asymptomatic."

UPS authorized Dr. Wodowski to evaluate and treat Mr. Wade. The parties took Dr. Wodowski's deposition and offered it as proof at the hearing.

Dr. Wodowski saw Mr. Wade in May 2023. Mr. Wade told him that he began experiencing left-hip pain after his 2020 work accident. He exhibited pain, stiffness, and limited motion in his left hip consistent with arthritis. X-rays revealed severe "bone-on-bone" left-hip arthritis.

Dr. Wodowski noted that Mr. Wade's initial medical records did not record left-hip pain. He agreed that if arthritis developed from trauma, one would expect pain in the affected body part when the trauma occurred. He further agreed that he had no way of knowing whether Mr. Wade's arthritis was due to his work injury or a "normal degenerative process," and both were equally likely. He went on to say that while he believed the injury aggravated or exacerbated the arthritis, he had no way of knowing the extent this occurred so far out from the injury date.

On cross-examination, Dr. Wodowski admitted that he would not have expected someone with the level of Mr. Wade's hip arthritis to have been able to work pain-free as a UPS driver before his accident. However, he did not believe the accident caused the arthritis but felt it was more likely that it exacerbated it, which he defined as a "temporary worsening of the condition." He agreed the exacerbation was "one of the reasons" he wanted to do a hip replacement.

Dr. Wodowski affirmed that it was possible Mr. Wade's low-back symptoms had "masked" his left-hip symptoms. He conceded that Mr. Wade's hip and groin pain would not wane without surgery and it increased the chances of his full recovery from his low-back symptoms.

On redirect, Dr. Wodowski confirmed that he believed Mr. Wade's work injury caused an exacerbation or "temporary increase in symptoms." While he could not pinpoint

what caused Mr. Wade's condition to reach the need for a hip replacement, he did not believe it was related to the "actual work injury itself."

Mr. Wade also testified at the hearing. He said that after his injury, he experienced significant left-groin pain that he originally attributed to his low-back condition, but the symptoms did not improve after his surgery. He also said that while he had episodes of low-back pain before his work injury, he had never suffered from hip and groin pain.

On the issue of temporary disability benefits, Mr. Wade agreed that Dr. Murrell placed him at maximum medical improvement for his back and neck injuries and released him to return to work on January 17, 2024. But he said UPS would not allow him to return because of Dr. Wodowski's recommendation that he have hip replacement surgery.

### Findings of Fact and Conclusions of Law

To obtain benefits, Mr. Wade must show a likelihood of prevailing at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2023). Here, the question is whether he suffered a left-hip injury that primarily arose from his 2020 work injury. The Court finds he is unlikely to prove that he did and denies his requested benefits.

To prove causation, Mr. Wade must show to a reasonable degree of medical certainty that he suffered an accidental injury due to a "specific incident, or set of incidents, that arose primarily out of and in the course and scope of employment and is identifiable by time and place of occurrence. The definition also includes an aggravation of a preexisting disease or condition if the aggravation arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(12)(A).

The injury or aggravation must be shown "to a reasonable degree of medical certainty that it contributed more than fifty percent" in causing his disablement and need for treatment. *Id.* at -102(12)(C). "Reasonable degree of medical certainty" means "it is more likely than not considering all causes, as opposed to speculation or possibility." *Id*. at -102(12)(D). Proving this requires an expert medical opinion. *Id*.

Tennessee Code Annotated section 50-6-102(12)(E) says that an authorized treating physician's causation opinion is presumed correct but may be rebutted by a preponderance of the evidence. Both Dr. Murrell and Dr. Wodowski are authorized physicians; thus, both opinions are presumed correct. *Johnson v. Inspire Brands, Inc.*, 2022 TN Wrk. Comp. App. Bd. LEXIS 35, at *23 (Sept. 7, 2022).

Although neither opinion may be presumed correct over the other, the Court may take other factors into consideration when weighing opinions, such as "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Bass v. The*

*Home Depot U.S.A, Inc.*, 2017 TN Wrk Comp. App. Bd. LEXIS 36, at *9 (May 26, 2017).

Dr. Murrell's opinion is in a response to a letter from Mr. Wade's counsel, in which he agreed that the work injury "more likely than not" caused an "exacerbation" of a left hip pathology that had been "previously clinically silent and asymptomatic." This letter attempted to track the language in *Vercek v. YRC, Inc.*, TN Wrk. Comp. App. Bd. LEXIS 39, at *4 (June 6, 2017).

In *Vercek*, the employee suffered a shoulder injury that triggered arthritic symptoms that led to the treating doctor's recommendation for a shoulder replacement. The only medical evidence came from the treating doctor, who said the employee had an underlying arthritic pathology that had been "present for a long time," but the work injury "exacerbated the pathology" that had been "clinically silent and asymptomatic." He further said the aggravation arose primarily from the work injury and that a shoulder replacement was reasonable and necessary to treat this aggravation.

The Appeals Board affirmed the trial court's decision to order shoulder replacement surgery, finding the doctor's opinion was enough to establish causation. The Board found the doctor's statement that he would not have done surgery if the employee had not been symptomatic, as well as the fact that the employee's symptoms had not returned to the level they were before the injury, relevant in determining a compensable aggravation. *Id.* at *8, 9.

If Dr. Murrell's letter were the only medical opinion, Mr. Wade would likely have enough evidence to establish he would prevail on causation at trial. However, the Court must weigh it against Dr. Wodowski's opinion.

Both doctors are orthopedists, but Dr. Wodowski is the acknowledged "hip replacement" specialist. Although Dr. Murrell treated Mr. Wade for several years and Dr. Wodowski only saw him once, the Court does not consider this a critical factor, given that Mr. Wade's credibility or the validity of his subjective complaints are not disputed here. However, the Court does give substantial weight to the fact that Dr. Murrell's opinion mostly consists of one-word responses to a letter, while the parties thoroughly explored Dr. Wodowski's opinions, and he had ample opportunity to explain his thought process during his deposition.

Although Dr. Wodowski conceded that Mr. Wade's work injury likely exacerbated his preexisting arthritis and made it symptomatic, he additionally said he had no way of knowing the extent of the exacerbation so far out from the injury date. He also defined "exacerbation" as a "temporary worsening of the condition." Although his admission that he did not believe Mr. Wade's hip pain would improve without a hip replacement weakened this definition, the Court does not find it fatal, given that he concluded the deposition by reiterating that he did not believe the work injury was what made the hip

4

replacement surgery necessary.

Taken in its entirety, the evidence in this case is similar to that in *Edwards v. Peoplease, LLC*, 2022 TN Wrk. Comp. App. Bd. LEXIS 13, at *24, 25 (Mar. 18, 2022). There, the employee was previously asymptomatic but suffered an aggravation of preexisting arthritis in both knees. The arthritis caused the need for bilateral knee replacements. The Appeals Board held that, while the employee proved entitlement to treatment for the aggravation, she did not prove that the accident primarily caused her need for knee replacements.

Here, the Court finds Mr. Wade is not likely to prove that the work accident primarily caused the left hip arthritic condition; thus, his request for hip replacement surgery is denied. However, UPS shall pay for the reasonable and necessary treatment of the exacerbation of his arthritic symptoms.

Likewise, the Court finds that Mr. Wade is not likely to prove his injury caused his current disablement. Given that he has already reached maximum medical improvement for his compensable low-back and neck injuries, the Court holds that he is not entitled to additional temporary disability benefits.

IT IS, THEREFORE, ORDERED:

1. Mr. Wade's request for a left-hip replacement is denied. However, UPS shall authorize Dr. Wodowski to provide reasonable and necessary medical treatment for the work-related exacerbation of Mr. Wade's left-hip arthritis.

2. Mr. Wade's request for additional temporary partial disability benefits is denied.

3. This case is set for a Scheduling Hearing on **May 8, 2024, at 10:30 a.m. Central Time**. The parties must call 615-253-0010. Failure to appear might result in a determination of the issues without the party's participation.

**ENTERED April 1, 2024.**

_____
**ROBERT DURHAM, JUDGE**
**Court of Workers' Compensation Claims**

## APPENDIX

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Mr. Wade's Pre-Trial Brief
5. UPS's Pre-Trial Brief

Exhibits:
1. Dr. Murrell's medical records with causation letter
2. Dr. Wodowski's deposition with attached exhibits

## **CERTIFICATE OF SERVICE**

I certify that a copy of the Order was sent as indicated on April 1, 2024.

| Name | Mail | Email | Service sent to: |
|---|---|---|---|
| Jeffrey P. Boyd | | X | jboyd@borenandboyd.com |
| Kyle Cannon | | X | KCannon@gwtclaw.com |

_____
**PENNY SHRUM, Court Clerk**
**WC.CourtClerk@tn.gov**



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board.  To do so, you must:

1.  Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
    ➢  If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
    ➢  If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
    When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2.  You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3.  You are responsible for ensuring a complete record is presented on appeal.  If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee.  If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk.  The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted.  For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4.  After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

    **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable.  See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____      ☐ Motion Order filed on _____

☐ Compensation Order filed on_____      ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties
**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*